## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **FIDELITY AND DEPOSIT COMPANY OF MARYLAND** | ) ) ) | |
| *Plaintiff,* | ) ) | **Civil Action No.** |
| **v.** | ) ) ) | |
| **AMAAZZ CONSTRUCTION GROUP, LLC f/ka/ AMAAZZ GROUP, LLC, AMAAZZ CONSTRUCTION OHIO, LLC, THE KNOCH CORPORATION, SMC CONSTRUCTION SOUTHEAST, LLC, SMC CONSTRUCTION GROUP, LLC, JOHN A. JOHNSON, SUGUNESWARAN S. SUGUNESS, LATHA JOHNSON, and SUSHEELA SUGUNESS** | ) ) ) ) ) ) ) ) | |
| *Defendants.* | ) ) ) | |

---

## COMPLAINT

---

Plaintiff Fidelity and Deposit Company of Maryland ("F&D" or the "Surety") respectfully states the following for its Complaint against Defendants Amaazz Construction Group, LLC f/k/a Amaazz Group, LLC ("Amaazz Construction Group"), Amaazz Construction Ohio, LLC ("Amaazz Construction Ohio"), The Knoch Corporation, SMC Construction Southeast, LLC ("SMC Construction"), SMC Construction Group, LLC ("SMC Group"), John A. Johnson, Suguneswaran S. Suguness, Latha Johnson, and Susheela Suguness (each Defendant individually an "Indemnitor" and all Defendants collectively the "Indemnitors"):

## I.    **PARTIES**

1.    F&D is a corporation formed under the laws of the State of Illinois, with its corporate headquarters and principal place of business located at 1299 Zurich Way, Schaumburg, IL 60196, which is the location from which F&D's high-level officers direct, control, and coordinate F&D's corporate activities. Thus, F&D is a citizen of the State of Illinois for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

2.    Upon information and belief, Amaazz Construction Group, LLC f/k/a Amaazz Group, LLC is a limited liability company formed under the laws of the State of Ohio, whose members are citizens of the State of Ohio. Thus, upon information and belief, Amaazz Construction Group, LLC f/k/a Amaazz Group, LLC is a citizen of the State of Ohio for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

3.    Upon information and belief, Amaazz Construction Ohio, LLC is a limited liability company formed under the laws of the State of Ohio, whose members are citizens of the State of Ohio. Thus, upon information and belief, Amaazz Construction Ohio, LLC is a citizen of the State of Ohio for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

4.    Upon information and belief, The Knoch Corporation is a corporation formed under the laws of the State of Ohio, with a corporate headquarters and principal place of business located at 1015 Schneider St. Southeast, North Canton, OH 44720, which is the location from which The Knoch Corporation's high-level officers direct, control, and coordinate The Knoch Corporation's corporate activities. Thus, upon information and belief, The Knoch Corporation is a citizen of the State of Ohio for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

5.    Upon information and belief, SMC Construction Southeast, LLC is a limited liability company formed under the laws of the State of Florida, whose members are citizens of

the States of Florida and/or Ohio. Thus, upon information and belief, SMC Construction Southeast, LLC is a citizen of the States of Ohio and/or Florida for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

6. Upon information and belief, SMC Construction Group, LLC is a limited liability company formed under the laws of the State of Florida, whose members are citizens of the States of Florida and/or Ohio. Thus, upon information and belief, SMC Construction Group, LLC is a citizen of the States of Ohio and/or Florida for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a)

7. Upon information and belief, John A. Johnson is a citizen of the State of Ohio for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

8. Upon information and belief, Suguneswaran S. Suguness is a citizen of the State of Ohio for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

9. Upon information and belief, Latha Johnson is a citizen of the State of Ohio for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

10. Upon information and belief, Susheela Suguness is a citizen of the State of Ohio for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

## II. JURISDICTION AND VENUE

11. This Honorable Court possesses original jurisdiction over F&D's Complaint pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and the matter in controversy is between citizens of different states (Illinois Plaintiff versus Ohio and/or Florida Defendants).

12. This Honorable Court possesses the power to declare the respective rights and other legal relations of F&D and the Indemnitors as requested herein pursuant to 28 U.S.C. § 2201(a).

13.     This Honorable Court possesses the authority to award the injunctive relief requested herein pursuant to Rule 65 of the Federal Rules of Civil Procedure.

14.     Venue is proper in the United States District Court for the Southern District of Ohio, Eastern Division, pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 115(b) because a substantial part of the events or omissions giving rise to F&D's potential liability and "Loss" (as defined herein) occurred within the Southern District of Ohio, Eastern Division (Pickaway County).

15.     Moreover, by executing the indemnity agreements and/or riders thereto at issue in this action, the Indemnitors consented to personal jurisdiction and venue in any Federal Court in which (a) any Indemnitor resides or has property, (b) any bonded obligation arises or is performed in whole or in part, or (c) any action may be brought against F&D.

16.     Thus, jurisdiction and venue are also proper in the Southern District of Ohio, Eastern Division under the indemnity agreements and/or riders thereto because (a) certain of F&D's obligations arise and/or must be performed in the Southern District of Ohio, Eastern Division (Pickaway County) and (b) an action may be brought against F&D in the Southern District of Ohio, Eastern Division relative to its bonded obligations.

### III.     FACTUAL ALLEGATIONS

#### The Indemnity Agreements

17.     Certain of the Indemnitors have engaged in the construction contracting business, and certain of the Indemnitors have needed to obtain surety bonds in relation to their construction contracts.

18.     Amaazz Construction Group, John A. Johnson, John A. Johnson, Suguneswaran S. Suguness, Latha Johnson, Susheela Suguness, and non-party Phalen Steel Construction Company executed the General Indemnity Agreement dated August 13, 2018 attached hereto as **Exhibit 1**

as a condition of F&D's issuance of surety bonds on behalf of the Indemnitors, under which (a) The Knoch Corporation became an additional Indemnitor pursuant to the Rider Adding Additional Indemnitor to General Indemnity Agreement attached hereto as **Exhibit 2** and (b) Amaazz Construction Ohio qualifies as a "Related Entity."

19.     SMC Construction, SMC Group, Amaazz Construction Group, John A. Johnson, Suguneswaran S. Suguness, Latha Johnson, and Susheela Suguness also executed the General Indemnity Agreement dated August 13, 2018 attached hereto as **Exhibit 3**, under which (a) Amaazz Construction Ohio became an additional Indemnitor pursuant to the Rider Adding Additional Indemnitor to General Indemnity Agreement attached hereto as **Exhibit 4** and (b) Amaazz Construction Ohio qualifies as a "Related Entity."

20.     The terms of the General Indemnity Agreement attached hereto as Exhibit 1 and the General Indemnity Agreement attached hereto as Exhibit 2 (collectively, the "Indemnity Agreements") are identical.

21.     With respect to the individuals/entities that qualify as Indemnitors thereunder, the scope of bonds to which the Indemnitors' obligations thereunder apply, the entities to which the Indemnitors' obligations thereunder are owed, and the joint and several liability of the Indemnitors, an introductory Paragraph of the Indemnity Agreements states:

> THIS GENERAL INDEMNITY AGREEMENT ("Agreement") . . . by [Indemnitors] (each an "Indemnitor" and all of the above individually and collectively "Indemnitors") in favor of ZURICH AMERICAN INSURANCE COMPANY and ZURICH INSURANCE GROUP LTD and all their respective subsidiaries, affiliates and associated companies in any jurisdiction, including but not limited to FIDELITY AND DEPOSIT COMPANY OF MARYLAND, COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, ZURICH INSURANCE COMPANY LTD, and AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, and their respective successors and assigns (individually and collectively "Surety") with respect to any bond, undertaking, and/or obligation of suretyship or guarantee executed, provided or procured (herein "issued") by Surety (whether as surety, co-surety, reinsurer or

otherwise) **in the name of or on behalf of any Indemnitor, any Related Entity, any other entity on request in accordance with this Agreement, or any combination thereof, whether issued prior to or after the execution of this Agreement, and all renewals, extensions, modifications and substitutions of bonds (collectively "Bonds" and each individually a "Bond").** This Agreement shall be liberally construed so as to fully protect, exonerate, indemnify and hold Surety harmless from all liability and Loss.

As an inducement to Surety to issue or refrain from cancelling Bonds, Indemnitors represent and agree for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, as follows . . . .

(Emphasis added).

22. With respect to the definition of a "Related Entity," Paragraph 10 of the Indemnity

Agreements, entitled "Bonds for Other Entities," provides:

**Indemnitors' obligations under this Agreement shall also apply to any Bond Surety issues for or on behalf of any Related Entity. "Related Entity" means: (a) any present or future, directly or indirectly owned subsidiary or affiliate of any Indemnitor; (b) any legal entity in which any Indemnitor has or acquires an ownership interest;** and (c) any joint ventures, consortiums, teaming arrangements or any other business collaboration or economic enterprise ("Joint Venture") in which any Indemnitor is or was a member at the time the Bond was issued. Indemnitors' obligations under this Agreement shall also apply to any Bond Surety issues for or on behalf of any entity other than a Related Entity, on the written request of any Indemnitor.

(Emphasis added).

23. With respect to the Indemnitors' duty to exonerate, indemnify, and hold F&D

harmless from any and all liability and "Loss," Paragraph 2 of the Indemnity Agreements, entitled

"Indemnity," provides, in relevant part:

Indemnitors shall exonerate, indemnify, and hold Surety harmless from any and all liability and Loss, sustained or incurred, arising from or related to: (a) any Bond, (b) any Claim, (c) any Indemnitor failing to timely and completely perform or comply with this Agreement, (d) Surety enforcing this Agreement or (e) any act of Surety to protect or procure any of Surety's rights, protect or preserve any of Surety's interests, or to avoid, or lessen Surety's liability or alleged liability.

24. Paragraph 30 of the Indemnity Agreements defines "Loss" as follows:

Loss means all premiums due to Surety and any and all liability, loss, Claims, damages, court costs and expenses, attorneys' fees (including those of Surety), consultant fees, and all other costs and expenses, including but not limited to any additional or extra-contractual damages arising from Surety's Settlement of any Claim. Pre-judgment and post- judgment interest shall accrue from the date of any payment made by Surety with respect to any of the foregoing at the maximum default rate permitted by law.

25. Paragraph 30 of the Indemnity Agreements defines "Claim" or "Claims" as "any notice, claim, demand, defense, counterclaim, setoff, lawsuit or proceeding or circumstance which may constitute, lead to or result in Loss, liability, or asserted liability in connection with any Bond, any Bonded Contract, or this Agreement."

26. With respect to the scope of the Indemnitors' duty to exonerate, indemnify, and hold F&D harmless relative to all Claims and/or Loss, Paragraph 2 of the Indemnity Agreements further provides:

The liability of Indemnitors to Surety under this Agreement includes all Claims made on Surety, **all payments made, Loss incurred, and all actions taken by Surety under the Good Faith belief that Surety is, would be or was liable for the amounts paid or the actions taken, or that it was necessary or expedient to make such payments or take such actions, whether or not such liability, necessity or expediency existed.**

 (Emphasis added).

27. Paragraph 30 of the Indemnity Agreements defines "Good Faith" as, "with respect to any act, exercise of discretion or omission by Surety, **an absence of dishonesty, evil intent and actual malice toward Principal and Indemnitors**." (Emphasis added).

28. With respect to the timing and/or triggering of the Indemnitors' payment and other obligations to F&D, Paragraph 2 of the Indemnity Agreements further states, "Indemnitors shall promptly, upon demand, make payment to Surety **as soon as liability or Loss exists, whether or not Surety has made any payment**." (Emphasis added).

29.     With respect to procedure for proving the fact, amount, and extent of the Indemnitors' liability to F&D for Loss, Paragraph 2 of the Indemnity Agreements also states, "An itemized statement of Loss, sworn to by any officer of Surety, or the voucher or other evidence of any payment, shall be *prima facie* evidence of the fact, amount and extent of the liability of Indemnitors for such Loss."

30.     With respect to the Indemnitors' obligation to procure the full and complete discharge of F&D's obligations under any Bonds upon demand, Paragraph 2 of the Indemnity Agreements further states:

> Indemnitors shall promptly, upon demand, procure the full and complete discharge of Surety from all Bonds and all liability in connection with such Bonds. **If Indemnitors are unable to obtain discharge of any or all such Bonds within the time demanded, Indemnitors shall promptly deposit with Surety an amount of money that Surety determines is sufficient to collateralize or pay any outstanding bonded obligations**.

(Emphasis added).

31.     With respect to F&D's absolute and unconditional right to settle any Claim and to take other actions to protect F&D's interests, Paragraph 3 of the Indemnity Agreements, entitled "Surety's Right to Perform, Settle and/or Modify," provides:

> Surety shall have the absolute and unconditional right and is authorized but not required to: (a) adjust, pay, perform, decline to perform, compromise, settle, deny, litigate or otherwise resolve any Claim and/or any claim, counterclaim, defense or setoff held by or made against any Indemnitor, Principal or other entity and/or to take any action to protect any rights of Surety or to preserve or protect Surety's interests, or to avoid or lessen any alleged liability (hereinafter "Settlement"); and (b) modify, consent to or decline to consent to modification of any Bond and/or Bonded Contract , and/or to take, consent to or decline to consent to any assignment (hereinafter "Modification").  Any Settlement and/or Modification by Surety shall be final, binding and conclusive upon Indemnitors. Indemnitors shall remain bound under this Agreement for all Loss even though any such Settlement or Modification by Surety does or might substantially increase the liability of Indemnitors.

32.     With respect to the Indemnitors' duty to collateralize F&D upon demand in an amount F&D determines is sufficient to fund any liability or Loss, Paragraph 4 of the Indemnity Agreements, entitled "Place in Funds," states:

> **Indemnitors agree to promptly deposit with Surety, on demand, an amount of money that Surety determines is sufficient to fund any liability or Loss**.  Such funds may be used by Surety to pay Loss or may be held by Surety as collateral against potential future Loss.  Any remaining funds held by Surety after payment of all sums due to Surety under this Agreement shall be returned upon the complete release and/or discharge of Surety's liability under all Bonds.

(Emphasis added).

33.     With respect to the Indemnitors' assignment of certain "Collateral" to F&D and F&D's license to utilize the "Collateral," Paragraph 5 of the Indemnity Agreements, entitled "Pledge and Assignment of Collateral," states:

> Indemnitors pledge, assign, transfer and set over to Surety the Collateral, as collateral to secure the obligations in this Agreement, whether incurred before or after the execution of this Agreement, including a license to use the Collateral, without cost, to perform or discharge Surety's obligations under any Bond or Bonded Contract.  This pledge and assignment becomes effective on the date of this Agreement, or the earliest date allowable by law.

34.     Paragraph 30 of the Indemnity Agreements defines "Collateral" as follows:

> Collateral means all right, title and interest of one or more Indemnitors in the following, wherever located, and whenever acquired or arising: (a) all Bonded Contracts; (b) all goods (including equipment, machinery, tools and materials), general intangibles, and inventory, to the extent not subject to a prior perfected security interest; (c) all subcontracts and purchase orders arising under any Bonded Contract, and all surety bonds supporting such subcontracts and purchase orders; (d) all sums which are or may become payable in connection with any Bonded Contract and all other contracts in which any Indemnitor has an interest; (e) all intellectual property (including proprietary software) necessary  or required  to perform any Bonded Contract; (f) any facilities or plants necessary or required to perform any Bonded Contract; and (g) any real or personal property, the improvement of which is secured by any Bond.

35. With respect to the Indemnitors' irrevocable nomination and/or appointment of F&D as their attorney-in-fact for purposes of exercising F&D's rights in the Collateral, Paragraph 17 of the Indemnity Agreements, entitled "Power of Attorney," states:

> Indemnitors irrevocably nominate, constitute, appoint and designate Surety, and any persons designated by Surety, as their attorney-in-fact, with the right, but not the obligation, to exercise all of the rights of Indemnitors pledged, assigned, transferred and set over to Surety in this Agreement, including, in the name of Indemnitors to make, execute, and deliver any and all assignments or documents deemed necessary and proper by Surety in order to exercise its rights, powers and remedies under this Agreement. Indemnitors ratify and confirm all acts taken by Surety and its designees as such attorney-in-fact and agree to protect and hold harmless Surety and its designees for all such acts.

36. With respect to the trust fund nature of the proceeds of any "Bonded Contract," Paragraph 6 of the Indemnity Agreements, entitled "Trust Funds," states:

> **All sums due, to become due, or received by any Indemnitor or Principal for or on account of any Bonded Contract are trust funds in which Surety has an interest as a beneficiary of the trust whether in the possession of such Indemnitor or Principal or another. Such trust funds shall be held in trust for the benefit and payment of all obligations or Loss for which Surety may be liable under any Bond.** Surety has the right, but not the obligation, to require that trust funds be placed in a dedicated trust fund account. This Agreement and declaration constitute notice of such trust.

(Emphasis added).

37. Paragraph 30 of the Indemnity Agreements defines a "Bonded Contract" as "any contract or other obligation referred to in any Bond or secured by any Bond."

38. With respect to F&D's right, in its sole discretion, to take over and/or arrange for the performance of any Bonded Contract in its sole discretion if an "Event of Default" occurs, Paragraph 8 of the Indemnity Agreements, entitled "Takeover," provides:

> **If an Event of Default occurs, Surety shall have the right, in its sole discretion, and is authorized to take possession of any part or all of the work, materials and equipment under any Bonded Contract and any other materials or equipment which Surety deems necessary or proper to perform such Bonded**

**Contract, and to perform or arrange for the performance of such Bonded Contract**.

(Emphasis added).

39.     Paragraph 30 of the Indemnity Agreements defines an "Event of Default" as follows:

> **Event of Default means any one or more of the following: (a) failure to timely perform or comply with any Bonded Contract or failure to timely pay invoices, bills or other indebtedness or to discharge liabilities under any Bonded Contract or Bond; (b) Breach of any Bond or declaration of default under any Bonded Contract (whether admitted or contested);** (c) Surety setting any reserve against Loss or incurring Loss; **(d) breach of or failure to timely comply with this Agreement;** (e) any Principal or Indemnitor becoming the subject of any bankruptcy, insolvency, receivership, creditor assignment or trusteeship (whether voluntary or involuntary and whether insolvent or not); (f) any occurrence which deprives or impairs any Principal, Indemnitor and/or Surety of the use of any Collateral; (g) any individual Indemnitor becoming legally incompetent, imprisoned, convicted of a felony, or disappearing and being unable to be located; (h) a Change in Control; (i) any default, however described, which occurs under any document relating to the financial indebtedness of any Principal or Indemnitor, or any event as a result of which that financial indebtedness is or becomes capable of being rendered prematurely due and payable; or (j) any representation by any Principal or Indemnitor to Surety which was materially false or misleading when made.

(Emphasis added).

40.     With respect to the Indemnitors' duty to provide F&D access to any and all information and documents concerning the business or financial situation of any Indemnitor or any Related Entity, Paragraph 11 of the Indemnity Agreements, entitled "Financial Statements, Books and Records," states:

> Indemnitors shall promptly provide Surety with any and all information and documentation concerning the business or financial situation of any Indemnitor or any subsidiary, affiliate or Related Entity of any Indemnitor, as requested by Surety. Indemnitors shall furnish on demand, and Surety shall have the right to access, examine and copy the books, records and accounts of Indemnitors and of any entity under the control of any Indemnitor, at no cost to Surety. Indemnitors authorize any entity in which funds of any Indemnitor may be deposited to furnish to Surety a statement of the amount of such deposits as of the date requested. Indemnitors

authorize any and all lenders, obligees, subcontractors, suppliers, accountants, other insurers, and other persons or entities to furnish to Surety any information requested by Surety, including but not limited to the performance of obligations under any Bond or Bonded Contract and payments related to any such Bond or Bonded Contract.

41.     With respect to F&D's right to specific performance of the Indemnitors' obligations thereunder, Paragraph 16 of the Indemnity Agreements states:

Indemnitors acknowledge that the failure of Indemnitors, collectively or individually, to perform or comply with any provision of this Agreement shall cause irreparable harm to Surety for which Surety has no adequate remedy at law. Indemnitors agree that Surety shall be entitled to injunctive relief and/or specific performance, and Indemnitors waive any claims or defenses to the contrary.

42.     Paragraph 18 of the Indemnity Agreements, entitled "Joint and Several Liability," confirms that the Indemnitors' obligations to F&D are joint and several and that F&D has the option of pursuing relief against one or more of the Indemnitors as follows, "**Indemnitors are jointly and severally liable to Surety under this Agreement. Surety may enforce this Agreement against any Indemnitor without joining any other Indemnitor, person or entity**." (Emphasis added).

43.     With respect to the Indemnitors' consent to jurisdiction and venue in this Court, Paragraph 21 of the Indemnity Agreements, entitled "Lawsuits and Jurisdiction," states:

Separate lawsuits may be brought under this Agreement as causes of action accrue, and the bringing of any lawsuit or the recovery of any judgment on any cause of action shall not prejudice or bar the bringing of other lawsuits, on the same or other causes of action, whether arising before or after any other lawsuit or cause of action. **In any legal proceeding brought by or against Surety that in any way relates to this Agreement, each Indemnitor irrevocably and unconditionally submits to the jurisdiction, at Surety's sole option, of the Federal, state and local courts in which (a) any Indemnitor resides or has property, (b) any bonded obligation arises or is performed in whole or in part, or (c) any action may be brought against Surety. Indemnitors submit to the jurisdiction of such courts and waive and agree not to assert that they are not subject to the jurisdiction of any such court or that the jurisdiction and/or venue is in an inconvenient forum or otherwise improper.**

(Emphasis added).

44.     With respect to the Indemnitors' knowing and voluntary waiver of any right they may have otherwise possessed to a trial by jury relative to the Indemnity Agreements, Paragraph 26 of the Indemnity Agreements, entitled "Jury Waiver," states, "Indemnitors hereby knowingly and voluntarily waive and covenant that they will not assert any right to trial by jury in respect to any legal proceeding arising out of this Agreement."

### The Events of Default, the Claims, and the Loss

45.     F&D issued various Bonds on behalf of the Indemnitors in reliance upon the Indemnitors' execution of the Indemnity Agreements in favor of F&D, as well as F&D's rights against the Indemnitors under the Indemnity Agreements.

46.     To date, various Events of Default have occurred including, but not necessarily limited to, (a) the Indemnitors' failure to timely perform or comply with certain Bonded Contracts and/or failure to timely pay invoices, bills, or other indebtedness or to discharge liabilities under certain Bonded Contracts, (b) the declaration of Amaazz Construction Ohio to be in default under a number of Bonded Contracts, and (c) the Indemnitors' failure to comply with the Indemnity Agreements.

47.     For example, as reflected by the July 13, 2021 letter attached hereto as **Exhibit 5**, Amaazz Construction Group (a) acknowledged that "[t]he other companies and Amaazz Construction Group are struggling to pay their vendors and union dues due to us borrowing from them" and (b) requested to "borrow, on behalf of Amaazz Construction Ohio LLC, $3,886,840.86 as a loan to complete the projects in hand."

48.     Moreover, as reflected by the July 20, 2021 letter attached hereto as **Exhibit 6** and the Determination to Default Contractor enclosed therein, the Ohio Department of Transportation

("ODOT") (a) "has defaulted AMAAZZ Construction Ohio LLC on [ODOT Project 143(20)] for failure to complete the work within a reasonable time and for prompt payment violations" and (b) has asserted a claim against the performance bond that F&D issued on behalf of Amaazz Construction Ohio in relation to ODOT Project 143(20).

49.     As reflected by the August 23, 2021 letter attached hereto as **Exhibit 7** and the Determination to Default Contractor enclosed therein, ODOT (a) "has defaulted AMAAZZ Construction Ohio LLC on [ODOT Project 7003(20)] for failure to complete the work within a reasonable time" and (b) has asserted a claim against the performance bond that F&D issued on behalf of Amaazz Construction Ohio in relation to ODOT Project 7003(20).

50.     As reflected by the August 27, 2021 letter attached hereto as **Exhibit 8** and the Determination to Default Contractor enclosed therein, ODOT (a) has defaulted Amaazz Construction Ohio on ODOT Project 253(20) for "failure to complete proceed with the Work in a manner necessary for completion of the Project by the Completion Date" and (b) has asserted a claim against the performance bond that F&D issued on behalf of Amaazz Construction Ohio in relation to ODOT Project 253(20).

51.     As reflected by the August 27, 2021 letter attached hereto as **Exhibit 9** and the Determination to Default Contractor enclosed therein, ODOT (a) has defaulted Amaazz Construction Ohio on ODOT Project 242(20) for "failure to complete proceed with the Work in a manner necessary for completion of the Project by the Completion Date" and (b) has asserted a claim against the performance bond that F&D issued on behalf of Amaazz Construction Ohio in relation to ODOT Project 242(20).

52.     As reflected by the August 30, 2021 letter attached hereto as **Exhibit 10** and the Determination to Default Contractor enclosed therein, ODOT (a) has defaulted Amaazz

Construction Ohio on ODOT Project 31(20) for "failure to complete proceed with the Work in a manner necessary for completion of the Project by the Completion Date" and (b) has asserted a claim against the performance bond that F&D issued on behalf of Amaazz Construction Ohio in relation to ODOT Project 31(20).

53.     As reflected by the August 30, 2021 letter attached hereto as **Exhibit 11** and the Determination to Default Contractor enclosed therein, ODOT (a) has defaulted Amaazz Construction Ohio on ODOT Project 606(19) for "failure to complete proceed with the Work in a manner necessary for completion of the Project by the Completion Date" and (b) has asserted a claim against the performance bond that F&D issued on behalf of Amaazz Construction Ohio in relation to ODOT Project 606(19).

54.     As reflected by the September 2, 2021 letter attached hereto as **Exhibit 12** and the Determination to Default Contractor enclosed therein, ODOT (a) has defaulted Amaazz Construction Ohio on ODOT Project 281(20) for "failure to complete proceed with the Work in a manner necessary for completion of the Project by the Completion Date" and (b) has asserted a claim against the performance bond that F&D issued on behalf of Amaazz Construction Ohio in relation to ODOT Project 281(20).

55.     Various other Claims have also been asserted against F&D relative to a number of Bonds and/or Bonded Contracts, which may constitute, lead to, or result in liability or Loss to F&D.

56.     In fact, F&D understands that Amaazz Construction Ohio is ceasing operations and one or more of the Indemnitors have directed subcontractors and/or suppliers of Amaazz Construction Ohio to assert claims against F&D relative to labor, material, equipment, etc. furnished on the Bonded Contracts.

57.     F&D has also paid Loss totaling $176,553.43 and continues to incur Loss including, but not limited to, attorneys' fees, consultant fees, and other cost/expenses by reason of having issued the Bonds and/or by reason of enforcing the Indemnity Agreements.

58.     F&D paid its Loss totaling $176,553.43 in the honest belief that F&D is, would be, or was liable for the amounts paid or the actions taken, or that it was necessary or expedient to make such payments or take such actions under the circumstances.

### The Indemnitors' Failure to Procure Full/Complete Discharge of F&D, to Collateralize F&D, and/or to Indemnify F&D's Loss

59.     As confirmed by the July 16, 2021 letter attached hereto as **Exhibit 13**, F&D placed the Indemnitors on notice of F&D's exposure to Loss.

60.     Moreover, as detailed more fully in the August 25, 2021 letter attached hereto as **Exhibit 14**, F&D also demanded that the Indemnitors, jointly and severally, (a) establish a separate, dedicated trust fund account relative to each of the Bonded Contracts into which all proceeds of such Bonded Contracts were to be deposited, (b) either (i) procure the full and complete discharge of F&D from all Bonds and all liability in connection with the Bonds or (ii) promptly deposit collateral totaling $12,500,000 (*i.e.*, the amount of money F&D determines to be sufficient to collateralize or pay any outstanding bonded obligations), (c) provide F&D with any and all information and documentation concerning the business or financial situation of any Indemnitor or any subsidiary, affiliate, or Related Entity and grant F&D access to examine and copy the books, records, and accounts of the Indemnitors, and (d) indemnify the $176,553.43 in Loss that F&D paid through the end of July 2021 by reason of having issued the Bonds and/or by reason of enforcing the Indemnity Agreements.

61.     To date, however, the Indemnitors have, among other things, (a) failed to establish a dedicated trust fund account relative to each of the Bonded Contracts into which all proceeds of

such Bonded Contracts were to be deposited, (b) failed to either (i) procure the full and complete discharge of F&D from all Bonds and all liability in connection with the Bonds or (ii) promptly deposit collateral totaling $12,500,000 (*i.e.*, the amount of money F&D determines to be sufficient to collateralize or pay any outstanding bonded obligations), (c) provided only limited information/documentation concerning the business/financial situation of the Indemnitors and/or granted only limited access to their books, records, and accounts, and (d) failed to indemnify F&D's Loss already paid of $176,553.43 by reason of having issued the Bonds and/or by reason of enforcing the Indemnity Agreements.

## IV.    CAUSES OF ACTION

### Count I — Specific Performance of the Indemnity Agreements (Deposit of Collateral)

62.     F&D incorporates the foregoing allegations as if fully set forth verbatim herein.

63.     Paragraph 2 of the Indemnity Agreements jointly and severally requires the Indemnitors promptly, upon demand, to procure the full and complete discharge of F&D from all Bonds and all liability in connection with such Bonds and, if the Indemnitors are unable to obtain discharge of any or all such Bonds within the time demanded, the Indemnitors must promptly deposit with F&D an amount of money that F&D determines is sufficient to collateralize or pay any outstanding bonded obligations.

64.     Paragraph 4 of the Indemnity Agreements jointly and severally requires the Indemnitors to promptly deposit with F&D, on demand, an amount of money that F&D determines is sufficient to fund any liability or Loss.

65.     Under a full reservation of F&D's rights under the Bonds and/or the Bonded Contracts, F&D has determined that cash collateral (*i.e.*, money) in the amount of $12,500,000 is

necessary/sufficient to collateralize or pay any outstanding bonded obligations and/or to fund any liability or Loss.

66.     Despite F&D's demand, however, the Indemnitors have failed to either (a) procure the full and complete discharge of F&D from all Bonds and all liability in connection with such Bonds within the time demanded in violation of Paragraph 2 of the Indemnity Agreements or (b) deposit any collateral with F&D in violation of Paragraph 2 and Paragraph 4 of the Indemnity Agreements.

67.     The Indemnitors' failure to either (a) procure the full and complete discharge of F&D from all Bonds and all liability in connection with such Bonds within the time demanded in violation of Paragraph 2 of the Indemnity Agreements or (b) deposit any collateral with F&D in violation of Paragraph 2 and Paragraph 4 of the Indemnity Agreements constitutes a material breach of the Indemnity Agreements.

68.     F&D lacks an adequate remedy at law in relation to the Indemnitors' violation of Paragraph 2 and Paragraph 4 of the Indemnity Agreements.

69.     The Indemnitors' violation of Paragraph 2 and Paragraph 4 the Indemnity Agreements has also caused and continues to cause irreparable harm to F&D because, among other things, F&D is being deprived of its bargained-for right to receive, hold, and/or utilize cash collateral relative to the Claims that have been and/or may be asserted against F&D relative to the Bonds.

70.     Moreover, under Paragraph 16 of the Indemnity Agreements, the Indemnitors expressly acknowledged that (a) their failure to perform or comply with Paragraph 2 or Paragraph 4 of the Indemnity Agreements shall cause irreparable harm to F&D for which F&D

has no adequate remedy at law and (b) F&D shall be entitled to injunctive relief and/or specific performance of the Indemnitors' obligations under Paragraph 2 and Paragraph 4.

71.     The balance of the equities weighs heavily in favor of entering an injunction and/or judgment in favor of F&D for specific performance of the Indemnitors' obligations under Paragraph 2 and Paragraph 4 of the Indemnity Agreements because, among other things, F&D is merely seeking to enforce the terms of the Indemnity Agreements to which the Indemnitors voluntarily agreed and F&D continues to be deprived of its bargained-for right to receive, hold, and/or utilize cash collateral relative to the Claims that have been and/or may be asserted against F&D relative to the Bonds.

72.     Compelling the Indemnitors to collateralize F&D would strengthen the public interests of enforcing the clear and unambiguous terms of written indemnity agreements under Ohio law, while instilling confidence in the surety industry in the State of Ohio.

73.     Therefore, F&D is entitled to the entry of an injunction/judgment compelling the Indemnitors to specifically perform their obligation to deposit cash collateral (*i.e.*, money) totaling $12,500,000 pursuant to Paragraph 2 and Paragraph 4 of the Indemnity Agreements.

### Count II — Specific Performance of the Indemnity Agreements (Trust Accounts)

74.     F&D incorporates the foregoing allegations as if fully set forth verbatim herein.

75.     Paragraph 6 of the Indemnity Agreements grants F&D the right, but not the obligation, to require that trust funds (*i.e.*, all sums due, to become due, or received by any Indemnitor for or on account of any Bonded Contract) be placed in dedicated trust fund accounts.

76.     Despite F&D's demands, however, the Indemnitors have failed to place the trust funds in dedicated trust fund accounts in violation of Paragraph 6 of the Indemnity Agreement.

77.     The Indemnitors' failure to place the trust funds in dedicated trust fund accounts constitutes a material breach of the Indemnity Agreements.

78.     F&D lacks an adequate remedy at law in relation to the Indemnitors' violation of Paragraph 6 of the Indemnity Agreements.

79.     The Indemnitors' violation of Paragraph 6 of the Indemnity Agreements has also caused and continues to cause irreparable harm to F&D because, among other things, F&D has been deprived of its ability to insure that the trust funds are being used for their sole, dedicated purpose of paying obligations or Loss for which F&D may be liable under any Bonds.

80.     Moreover, under Paragraph 16 of the Indemnity Agreements, the Indemnitors expressly acknowledged that (a) their failure to perform or comply with Paragraph 6 of the Indemnity Agreements shall cause irreparable harm to F&D for which F&D has no adequate remedy at law and (b) F&D shall be entitled to injunctive relief and/or specific performance of the Indemnitors' obligations under Paragraph 6.

81.     The balance of the equities weighs heavily in favor of entering an injunction and/or judgment in favor of F&D for specific performance of the Indemnitors' obligations under Paragraph 6 of the Indemnity Agreements because, among other things, F&D is merely seeking to enforce the terms of the Indemnity Agreements to which the Indemnitors voluntarily agreed and the Indemnitors expressly acknowledged that the trust funds were to be deposited into designated trust accounts upon F&D's demand.

82.     Compelling the Indemnitors to perform their duty to place the trust funds in dedicated trust fund accounts would strengthen the public interests of enforcing the clear and unambiguous terms of written indemnity agreements under Ohio law, while instilling confidence in the surety industry in the State of Ohio.

83.     Therefore, F&D is entitled to the entry of an injunction/judgment compelling the Indemnitors to specifically perform their obligation to place the trust funds in dedicated trust fund accounts pursuant to Paragraph 6 of the Indemnity Agreements.

## Count III — Specific Performance of the Indemnity Agreements (Books and Records)

84.     F&D incorporates the foregoing allegations as if fully set forth verbatim herein.

85.     Paragraph 11 of the Indemnity Agreements jointly and severally requires the Indemnitors to promptly (a) provide F&D with any and all information and documentation concerning the business or financial situation of any Indemnitor or any subsidiary, affiliate, or Related Entity of any Indemnitor as requested by F&D and (b) grant F&D access to examine and copy the books, records, and accounts of Indemnitors and of any entity under the control of any Indemnitor at no cost to F&D.

86.     To date, the Indemnitors have provided only limited information/documentation concerning the business/financial situation of the Indemnitors and/or granted only limited access to their books, records, and accounts in violation of Paragraph 11 of the Indemnity Agreements.

87.     The Indemnitors' failure to (a) provide F&D with any and all information and documentation concerning the business or financial situation of any Indemnitor or any subsidiary, affiliate, or Related Entity of any Indemnitor as requested by F&D and/or (b) grant F&D access to examine and copy the books, records, and accounts of Indemnitors and of any entity under the control of any Indemnitor at no cost to F&D constitutes a material breach of the Indemnity Agreements.

88.     F&D lacks an adequate remedy at law in relation to the Indemnitors' violation of Paragraph 11 of the Indemnity Agreements.

89. The Indemnitors' violation of Paragraph 11 of the Indemnity Agreements has also caused and continues to cause irreparable harm to F&D because, among other things, F&D has been deprived of documentation/information necessary to investigate and effectuate its various tools for preventing/mitigating its Loss under the Indemnity Agreements.

90. Moreover, under Paragraph 16 of the Indemnity Agreements, the Indemnitors expressly acknowledged that (a) their failure to perform or comply with Paragraph 11 shall cause irreparable harm to F&D for which F&D has no adequate remedy at law and (b) F&D shall be entitled to injunctive relief and/or specific performance of the Indemnitors' obligations under Paragraph 11.

91. The balance of the equities weighs heavily in favor of entering an injunction and/or judgment in favor of F&D for specific performance of the Indemnitors' obligations under Paragraph 6 of the Indemnity Agreements because, among other things, F&D is merely seeking to enforce the terms of the Indemnity Agreements to which the Indemnitors voluntarily agreed and F&D is being deprived of documentation/information necessary to investigate and effectuate its various tools for preventing/mitigating its Loss under the Indemnity Agreements.

92. Compelling the Indemnitors perform their duty to provide F&D with any and all information and documentation concerning the business or financial situation of any Indemnitor or any subsidiary, affiliate, or Related Entity and grant F&D access to examine and copy the books, records, and accounts of the Indemnitors would strengthen the public interests of enforcing the clear and unambiguous terms of written indemnity agreements under Ohio law, while instilling confidence in the surety industry in the State of Ohio.

93. Therefore, F&D is entitled to the entry of an injunction/judgment compelling the Indemnitors to specifically perform their obligation to provide F&D with any and all information

and documentation concerning the business or financial situation of any Indemnitor or any subsidiary, affiliate, or Related Entity and grant F&D access to examine and copy the books, records, and accounts of the Indemnitors pursuant to Paragraph 11 of the Indemnity Agreements.

<u>**Count IV — Breach of the Indemnity Agreements (Damages)**</u>

94.     F&D incorporates the foregoing allegations as if fully set forth verbatim herein.

95.     Paragraph 2 of the Indemnity Agreements jointly and severally obligates the Indemnitors to exonerate, indemnify, and hold F&D harmless from any and all liability and Loss, sustained or incurred, arising from or related to (a) any Bond, (b) any Claim, (c) any Indemnitor failing to timely and completely perform or comply with the Indemnity Agreements, (d) F&D's enforcement of  the Indemnity Agreements or (e) any act of F&D to protect or procure any of F&D's rights, protect or preserve any of F&D's interests, or to avoid, or lessen F&D's liability or alleged liability.

96.     To date, F&D has sustained/incurred and continues to sustain/incur Loss arising from or related to: (a) any Bond, (b) any Claim, (c) any Indemnitor failing to timely and completely perform or comply with the Indemnity Agreements, (d) F&D's enforcement of  the Indemnity Agreements or (e) any act of F&D to protect or procure any of F&D's rights, protect or preserve any of F&D's interests, or to avoid, or lessen F&D's liability or alleged liability.

97.     Despite F&D's demand, however, the Indemnitors have failed to exonerate, indemnify, and hold F&D harmless from any and all liability and Loss in violation of Paragraph 2 of the Indemnity Agreements.

98.     The Indemnitors' failure to exonerate, indemnify, and hold F&D harmless from any and all liability and Loss constitutes a material breach of the Indemnity Agreements.

99.     F&D has been damaged as a result of the Indemnitors' material breach of the Indemnity Agreements in an amount to be proven at trial, which amount currently exceeds $176,553.43.

100.    Therefore, F&D is entitled to the entry of judgment against the Indemnitors, jointly and severally, in an amount sufficient to fully exonerate, indemnify, and hold F&D harmless from any and all liability and Loss, sustained or incurred, arising from or related to (a) any Bond, (b) any Claim, (c) any Indemnitor failing to timely and completely perform or comply with the Indemnity Agreements, (d) F&D's enforcement of  the Indemnity Agreements or (e) any act of F&D to protect or procure any of F&D's rights, protect or preserve any of F&D's interests, or to avoid, or lessen F&D's liability or alleged liability, which amount will be proven at trial but currently exceeds $176,553.43.

WHEREFORE, PREMISES CONSIDERED, F&D prays for the following relief:

a) For the issuance of process requiring the Indemnitors to answer F&D's Complaint;

b) For the entry of an injunction/judgment compelling the Indemnitors to specifically perform their obligation to deposit cash collateral (*i.e.*, money) totaling $12,500,000 pursuant to Paragraph 2 and Paragraph 4 of the Indemnity Agreements;

c) For the entry of an injunction/judgment compelling the Indemnitors to specifically perform their obligation to place the trust funds (*i.e.*, all sums due, to become due, or received by any Indemnitor for or on account of any Bonded Contract) in dedicated trust fund accounts pursuant to Paragraph 6 of the Indemnity Agreements;

d) For the entry of an injunction/judgment compelling the Indemnitors to specifically perform their obligation to provide F&D with any and all information and documentation concerning the business or financial situation of any Indemnitor or any subsidiary, affiliate, or Related Entity and grant F&D access to examine and copy the books, records, and accounts of the Indemnitors pursuant to Paragraph 11 of the Indemnity Agreements;

e) For the entry of judgment against the Indemnitors, jointly and severally, in an amount sufficient to fully exonerate, indemnify, and hold F&D harmless from any and all liability and Loss, sustained or incurred, arising from or related to (a) any Bond, (b) any Claim, (c) any Indemnitor failing to timely and completely perform or comply with the Indemnity Agreements, (d) F&D's enforcement of  the Indemnity Agreements or

(e) any act of F&D to protect or procure any of F&D's rights, protect or preserve any of F&D's interests, or to avoid, or lessen F&D's liability or alleged liability pursuant to Paragraph 2 of the Indemnity Agreements, which amount will be proven at trial but currently exceeds $176,553.43; and

f) For such further relief, both general and specific, as may be appropriate in accordance with the nature of this cause including, but not limited to, pre-judgment and post-judgment interest.

Respectfully submitted,

/s/ Jarrod W. Stone

Jarrod W. Stone     OH bar No. 0096122

MANIER & HEROD

1201 Demonbreun Street, Suite 900

Nashville, Tennessee 37203

Phone: (615) 244-0030

Fax: (615) 242-4203

jstone@manierherod.com

*Attorney for Plaintiff Fidelity and Deposit Company of Maryland*